IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMERICAN LOANS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARTHUR J. GALLAGHER & CO.,<br><br>Defendant. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-00558 |

In 2015, Plaintiff American Loans purchased an insurance policy through Defendant Arthur J. Gallagher & Co. (Gallagher). American Loans renewed the same policy in 2016. The following year, American Loans was sued for professional negligence and American Loans' insurance company denied coverage. In response, American Loans filed this lawsuit, alleging that Gallagher should have made sure that American Loans' insurance policy covered professional negligence. American Loans also alleges that Gallagher failed to explain what was covered by the policy that it did secure for them.

Gallagher now moves for summary judgment. (ECF No. 20.) For the reasons stated below, Gallagher's motion is granted.

## BACKGROUND

In 2015, American Loans decided to become an approved lender for NattyMac Mortgage Services ("NattyMac"). (Llavina Dep. at 9:11-10:7, Ex. B to Mot. Summ. J. (ECF No. 21-2).) NattyMac required that American Loans first obtain errors and omissions insurance ("E&O insurance") and a fidelity bond. (Moore Dep. at 10:2-11:4, Ex. A to Mot. Summ. J. (ECF No.

21-1).) NattyMac did not require that American Loans obtain professional liability insurance. (Id. at 20:25-21:4.) American Loans contacted Gallagher for the necessary policy, and Gallagher gave American Loans four options: (1) E&O insurance, a fidelity bond, and professional liability insurance with $300,000 of coverage; (2) E&O insurance, a fidelity bond, and professional liability insurance with $500,000 of coverage; (3) E&O insurance and a fidelity bond with $300,000 of coverage; or (4) E&O insurance and a fidelity bond with $500,000 of coverage. (Exs. C & D to Mot. Summ. J. (ECF Nos. 21-3, 21-4).) The third and fourth options did not include professional liability coverage but had lower premiums. (Id.)

> According to Gallagher,
>
> Errors and Omissions (E&O) coverage protects mortgage lenders, such as American Loans, for failing to maintain or obtain the appropriate type or amount of hazard insurance on a mortgage at the time of closing.
>
> Fidelity bond coverage is essentially an employee dishonesty policy. It protects an insured for any dishonest or intentional acts committed by an employee that causes the company to sustain a loss.
>
> . . . [Professional liability] coverage protects an insured in the event a mortgage borrower asserts claims arising from professional services as a mortgage origination firm.

(Mot. Summ. J. at viii (ECF No. 20).) American Loans does not dispute any of these definitions. (Opp'n at vi-vii (ECF No. 26).)

One of Gallagher's employees, Michael Moore, spoke with American Loans' operating manager, Jose Llavina, shortly after Gallagher sent these policy quotes to American Loans. The parties dispute whether Mr. Moore discussed the differences between E&O insurance and professional liability insurance during that conversation. (Compare Moore Dep. at 19:9-22:21 with Llavina Dep. at 20:4-22:10.) Mr. Llavina maintains that, at the time, he did not understand

the difference between these two types of coverage and that Mr. Moore never explained it to him. (Llavina Dep. at 17:22-18:14.)

Afterward, Mr. Llavina sent an email to Mr. Moore that read, "I am sending you the signed Authorization to Bind. I have done two different ones because I don't remember what was needed and the price difference. For now I'd like to go with [the] less expensive one, we can see later how things go if we want to increase. Thank you for your help and please let me know if you have any questions." (Ex. E to Mot. Summ. J. (ECF No. 21-5).) Attached were signed authorizations for the two $300,000 proposals, one with professional liability coverage and one without.

Mr. Moore called Mr. Llavina the next day to discuss what Mr. Llavina meant when he wrote that he just wanted the insurance he "needed." According to Mr. Moore's testimony, Mr. Llavina indicated that he wanted whatever insurance was least expensive while still meeting NattyMac's requirements. (Moore Dep. at 23:13-25:2.) Mr. Llavina similarly testified that the word "need" in this context referred to "what was required by NattyMac . . . with the understanding, of course, that this was going to cover me for negligence." (Llavina Dep. at 30:7-12.)

Based on this conversation, Gallagher purchased E&O insurance and a fidelity bond for American Loans but did not bind any professional liability insurance. (Ex. G to Mot. Summ. J. (ECF No. 21-7).) The original policy ran from September 2015 to September 2016, and American Loans then renewed the same policy for the period of September 2016 to September 2017. (Exs. H & I to Mot. Summ. J. (ECF Nos. 21-8, 21-9).)

In March 2017, American Loans was sued for professional negligence. (Ex. K to Mot. Summ. J. (ECF No. 21-10).) After learning that its E&O insurance and fidelity bond would not cover the claims in that lawsuit, American Loans brought this action against Gallagher.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893-94 (10th Cir. 2019) (internal quotation omitted). Should the nonmovant bear the burden of persuasion at trial, "[t]hese facts must establish, at a minimum, an inference of the presence of each element essential to the case." Id. (quoting Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016)).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. Tabor, 703 F.3d at 1215. But this is only true insofar as "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986)).

ANALYSIS

I.  Professional Action

American Loans' first cause of action is simply labelled "Professional Action." But both parties treat the first cause of action as actually consisting of two different claims: (1) failure to procure the coverage that American Loans requested and (2) failure to advise American Loans regarding what type of coverage it should purchase.

**A. Failure to Procure Coverage**

In Utah, courts consider the totality of the circumstances to determine whether an insurance agent has assumed a duty to procure insurance:

> [A] court must look to the conduct of the parties and the communications between them, and more specifically to the extent to which they indicate that the agent has acknowledged an obligation to secure a policy. Where an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed. Further, if the parties have had prior dealings where the agent customarily has taken care of the customer's needs without consultation, then a legal duty to procure additional insurance may arise without express and detailed orders from the customer and acceptance by the agent. . . . [A]n application from the customer is sufficient to support a duty to procure insurance. A bare acknowledgment of a contract to protect the insured against casualty of a specified kind until a formal policy can be issued is enough. . . .

Harris v. Albrecht, 86 P.3d 728, 732-33 (Utah 2004) (quoting Alford v. Tudor Hall & Assocs., Inc., 330 S.E.2d 830, 832 (N.C. Ct. App. 1985)). Whether an insurer had a duty to procure insurance is a question of law. Id. at 730.

Here, it is undisputed that American Loans directed Gallagher to obtain E&O insurance and a fidelity bond and that Gallagher did in fact secure that coverage. The only question is whether, based on the conduct and the communications of the parties, Gallagher also had a duty

5

to procure professional liability coverage for American Loans. The court concludes that Gallagher had no such duty.

American Loans emphasizes that it submitted an application for professional liability insurance and that under Harris, "an application from the customer is sufficient to support a duty to procure insurance." Harris, 86 P.3d at 732. But American Loans actually submitted two applications to Gallagher, one which included professional liability coverage and one that did not, and then instructed Gallagher to select between them. Harris stands only for the proposition that an insured is entitled to the insurance it has requested. American Loans did not specifically request personal liability insurance; it requested only that Gallagher secure whatever insurance American Loans "needed." And both Mr. Moore and Mr. Llavina testified that "needed" in this context referred to meeting the requirements of NattyMac, which would not include professional liability insurance. (Moore Dep. at 23:13-25:2; Llavina Dep. at 30:7-12.)

While Mr. Llavina also testified that he believed this meant he would be getting some type of negligence coverage, there is no evidence that this belief was communicated to Mr. Moore or anyone else at Gallagher. On the contrary, Mr. Llavina's testimony is that he did not understand what was or was not covered by E&O insurance or professional liability insurance. (Llavina Dep. at 17:22-18:14.) Given this admission, it is not clear how American Loans could have conveyed to Gallagher with sufficient direction that it expected Gallagher to bind professional liability coverage for it. Moreover, the parties had no prior dealings from which Gallagher could infer what American Loans wanted. And there is no evidence that Gallagher told American Loans that it would be binding professional negligence coverage.

In sum, Gallagher procured the insurance that American Loans had requested. It had no duty to go beyond that request. Accordingly, American Loans' claim for failure to procure insurance must fail.

**B. Failure to Advise**

American Loans also asserts, as part of the first cause of action, that Gallagher had a duty to advise American Loans about the differences between E&O insurance and professional liability insurance but negligently failed to do so.

Neither party points to any Utah case addressing in what circumstances an insurance agent has a fiduciary-like obligation to give advice to a client. On the contrary, Utah law strongly implies that there is no such duty to advise. For example, in Asael Farr & Sons Co. v. Truck Ins. Exchange, 193 P.3d 650 (Utah Ct. App. 2008), the plaintiff argued that his insurance agent had a duty to "fully advise" the plaintiff regarding "the full nature and extent of . . . [the insured]'s significant insurable risks" and the "coverage that was available to cover such risks." Id. at 660. The plaintiff relied on Harris—the same case discussed by this court above—to advance this argument, but the Utah Court of Appeals rejected the argument. Id. at 661-62 (holding that Harris did not impose any kind of duty to advise on insurance agents); see also Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co., 371 F. Supp. 3d 983, 1005 (D. Utah 2019) (declining to find a fiduciary relationship between an insurance agent and insured plaintiff because "Utah courts have reserved findings of fiduciary duties to relationships that evince a higher degree of trust than ordinary agency relationships.").

Still, the Asael Farr & Sons Co. court did not explicitly foreclose the possibility that, under different facts, an insurance agent could be held liable for failing to properly advise a client. It held only that, on the facts before it, there was no basis to go beyond Harris and impose

a duty to advise. Accordingly, both parties urge this court to consider factors articulated in cases from outside Utah to determine whether a duty to advise may be imposed here.

Those cases typically hold that insurance agents have fiduciary-like duties to their insureds only if they have a "special relationship" with their client that goes beyond the typical agent-client relationship. For example:

> Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insureds, but, absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy. . . . Whether a special relationship has been formed turns on whether there is "entrustment," that is, whether the agent or broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competencies and skills.

Sewell v. Great Northern Ins. Co., 535 F.3d 1166, 1171 (10th Cir. 2008) (quoting Kaercher v. Sater, 155 P.3d 437, 441 (Colo. App. 2006)).

This is consistent with the law followed in most other states. See, e.g., Murphy v. Kuhn, 682 N.E.2d 972, 976 (N.Y. 1997) ("[I]t is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage . . . . Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status."); North Cypress Med. Ctr. Operating Co. Ltd. v. Gallagher Ben. Servs. Inc., Case No. 4:11-cv-00685, 2011 WL 5110456 at *3 (S.D. Tex. 2011) ("[A]dditional duties between brokers and their clients, however unusual, may arise depending on the facts surrounding the relationship between the insured and the agent or broker, and especially when the parties have a long-term relationship with high levels of trust.") (internal quotations omitted); Van Den Heuvel v. Al Credit Corp., 951 F. Supp. 2d 1064, 1080 (E.D. Wis. 2013) ("[A]bsent special circumstances, an insurer and its agents owe limited duties to the insured. For example, insurers do not have an affirmative duty

8

to advise the insured regarding the availability or adequacy of coverage. Only where a statutory obligation or a special relationship exists will a duty arise.") (internal citations omitted).

American Loans argues that there was a special relationship between the parties in this case because (1) Gallagher knew that American Loans was inexperienced with these types of insurance requirements and would be relying on Gallagher for advice, and (2) American Loans sent Gallagher two signed contracts for insurance and then "trust[ed] [Gallagher] to do what was best." (Opp'n at 4.)

The court concludes this is not enough to establish the existence of a special relationship. First, entities seeking to purchase insurance are almost always going to feel as if they know less about possible insurance policies than the agents who specialize in procuring insurance. See Harris, 86 P.3d at 733 (discussing how insurance policies for business entities are much more complicated than personal automobile or homeowner's policies). A special relationship requires "more than a normal insurer-insured relationship." Sewell, 535 F.3d at 1171. If the court adopted American Loans argument, and found that inexperience was enough to impose a special relationship, the exception would swallow the rule and a duty to advise would exist for all but the most sophisticated and experienced clients.

Relatedly, there is no evidence that Gallagher led American Loans to believe that it would provide special help to American Loans because of its inexperience. Although Mr. Moore called Mr. Llavina to get a clarification regarding Mr. Llavina's request for a policy that would cover his needs, this is not sufficient to establish a special relationship. See id. ("[A]n agent holding himself out as knowledgeable about insurance and attentive to the needs of individual insureds . . . [is] insufficient to create any legally meaningful level of 'entrustment.'")

American Loans' second argument is more complicated. At least arguably, American Loans did entrust Gallagher to make the decision regarding what type of insurance to bind when it emailed two possible contracts to Gallagher and then told Gallagher to choose between them. But this was not the end of the transaction. After speaking with Mr. Llavina, Gallagher secured E&O insurance and a fidelity bond for 2015. Then, a year later, American Loans renewed the same policy. It was this 2016 insurance policy that American Loans ultimately found to be unsatisfactory after American Loans was sued for professional negligence. In other words, American Loans had more than a year to review the language of the policy that Gallagher had secured and to determine whether that policy met all of its needs. Having failed to undertake such a review, American Loans cannot now complain that the insurance was inadequate.

American Loans' argument is, in many ways, analogous to the reasonable expectations doctrine, which the Utah Supreme Court abolished nearly thirty years ago.[1] The reasonable expectations doctrine was an equitable power under which a court could revise an existing insurance policy if "the insurer's agent knew or should have known that the insured had expectations that contradicted the policy's language and that the agent created or helped to create those expectations." See Allen v. Prudential Prop. & Cas. Ins. Co., 839 P.2d 798, 804 (Utah 1992). But the Utah Supreme Court eliminated this practice because "[t]he theory . . . essentially would allow a court to invalidate a clear provision of an insurance contract, even if the insured had not read it." Id. The same concern applies here: American Loans could have read its policy

---

[1] The Asael Farr & Sons Co. court similarly analogized the plaintiff's failure to advise claim in that action to the defunct reasonable expectations test in explaining why no duty to advise existed. See Asael Farr & Sons Co., 193 P.3d at 659-60.

and learned that it did not cover professional negligence, but it did not do so. Gallagher had no duty to explain this to American Loans.[2]

Notably, both the 2015 and 2016 insurance proposals gave Gallagher to American Loans explicitly warned that Gallagher was "mak[ing] no warranties in respect to policy limits or coverage considerations of the carrier" and that American Loans needed to "read all policies carefully" because "[a]ctual coverage is determined by policy language." (Ex. D at 5; Ex. H at 5.) The policies also explicitly state that Gallagher "will not be operating in a fiduciary capacity" in obtaining insurance for American Loans. (Id.) Another District of Utah case highlighted similar provisions when ruling that no special relationship existed between Gallagher and another insured:

> Gallagher provided Allegis with an insurance policy to consider and it was for Allegis to determine whether it wanted to be bound to that policy. . . . The parties were both business entities. While there is flowery language in the Proposal of Insurance about striving to assess and meet clients' needs, there is no clear promise to do so in any specific sense other than [to] obtain a policy for the client to consider. And, importantly, the Proposal of Insurance contained clear language advising Allegis that Gallagher was not acting in a fiduciary capacity.

Allegis Inv. Servs., LLC, 371 F. Supp. 3d at 1005.

In short, nothing prevented American Loans from reviewing the policy and realizing it needed more expansive coverage. Instead, it elected to renew the same insurance it already had. In making that decision, there was no entrustment or special relationship between American Loans and Gallagher and no duty to advise American Loans may be imposed upon Gallagher.

## II. Negligent Misrepresentation

Finally, American Loans' second cause of action is for negligent misrepresentation.

---

[2] To be clear, Mr. Moore testified that he did, in fact, explain the difference between E&O insurance and professional liability insurance to Mr. Llavina. (Moore Dep. at 13:2-10.) Nevertheless, for purposes of this motion, the court construes all evidence in the nonmoving party's favor, meaning that it accepts Mr. Llavina's testimony that Mr. Moore never explained this difference to him. (Llavina Dep. at 17:22-18:14.)

11

> A claim for negligent misrepresentation requires a party to demonstrate that (1) a party carelessly or negligently makes a false representation "expecting the other party to rely and act thereon," (2) the plaintiff actually relies on the statement, and (3) suffers a loss as a result of that reliance. Smith v. Frandsen, 2004 UT 55, ¶ 9, 94 P.3d 919. "[I]n addition to affirmative misstatements, an omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose." Id. at ¶ 11.

Moore v. Smith, 158 P.3d 562, 573 n.12 (Utah Ct. App. 2007).

There are no substantive differences between this cause of action and the duty to advise claim that the court just addressed. For both claims, American Loans is alleging that Gallagher had a legal duty to explain to American Loans how E&O insurance was different from professional liability insurance and negligently failed to do so. As with the previous claim, American Loans has cited no authority for the proposition that insurance agents have a legal duty to explain different types of insurance to their clients. In fact, case law says otherwise:

> Allegis claims that Gallagher made a material omission in not disclosing the options exclusion or warning that certain options trading might not be covered. But Gallagher had no duty to expressly disclose every limitation or exclusion in the Policy. Gallagher notified Allegis that there were exclusions and limitations and expressly told Allegis to read the Policy provided for details before authorizing Gallagher to bind coverage under the Policy. That constitutes adequate notice under the circumstances. Allegis was a sophisticated business and could review the Policy for its needs before authorizing Gallagher to bind coverage.

Allegis Inv. Servs., LLC, 371 F. Supp. 3d at 1006.

Rather than cite to any contradictory legal authority, American Loans simply emphasizes that Mr. Moore testified during his deposition that, in his view, "we [meaning Gallagher and its agents] have a duty to explain" insurance proposals. (Moore Dep. at 35:8-10.) But Mr. Moore's personal opinion that he had a "duty" to explain the differences between various policy options is not evidence of a <u>legal</u> duty to make certain disclosures. See Smith v. Frandsen, 94 P.3d 919, 923-24 (Utah 2004) ("The issue of whether a duty exists is entirely a question of law to be

determined by the court.") Mr. Moore may have felt a moral obligation to help his clients, or he may have had a duty imposed upon him by Gallagher as a condition of his employment, but that is not the same as having a duty imposed on insurance agents as a matter of law.

American Loans also argues that the duty arose because "Plaintiff said that it wanted coverage for negligent acts and that it would trust the Defendant to get what Plaintiff needed." (Opp'n at 5 (emphasis added).) Nothing in the record supports American Loans' assertion that it affirmatively requested coverage for its negligent acts; rather, Mr. Llavina testified that he did not know the difference between E&O insurance or professional liability insurance, but personally believed E&O insurance would cover professional negligence. (Llavina Dep. at 29:7-25.) There is no evidence that he expressed this belief to Mr. Moore.

In any event, even assuming that Gallagher had some type of duty in this context, American Loans reliance on Gallagher would not be reasonable. Gallagher explicitly warned American Loans to read the actual language of its insurance policy to determine the scope of coverage and American Loans had an entire year to do so before it renewed that coverage. It had ample time to determine whether its insurance was insufficient. American Loans' failure to do so is fatal to its claim. See, e.g., Allegis Inv. Servs., LLC, 371 F. Supp. 3d at 1006 ("Allegis has not shown that even if there were . . . material omissions in the Proposal of Insurance, it reasonably relied on them. . . . Allegis had the actual Policy, Gallagher told Allegis to read the Policy for specific coverages and exclusions, and Allegis had the most information for determining whether the Policy would cover its trading strategies. As a matter of law, there was no justifiable reliance.").

Because no duty existed and because American Loans cannot be said to have reasonably relied upon any omission by Gallagher, this second cause of action also fails.

## CONCLUSION

For the reasons stated above, Defendant Arthur J. Gallagher Co.'s motion for summary judgment (ECF No. 20) is GRANTED.

SO ORDERED this 26th day of March, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge